MAILED TO COUNSEL

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------X
ECHO W. DIXON,                       :
                                     :
                Plaintiff,           :
                                     :
        -against-                    :
                                     :
CAPTAIN LABORIEL, CORRECTION         :
OFFICER MARTINEZ, CAPTAIN SALIK,     :
ASSISTANT DEPUTY WARDEN COPELAND,    :
DEPUTY WARDEN BARRY, WARDEN LEROY    :
GRANT, DR. BILL DOE, CAPTAIN STEVE   :
DOE, CAPTAIN JOHNSON, ASSISTANT      :
DEPUTY WARDEN JOHN DOE, and          :
ASSISTANT DEPUTY WARDEN JAMES DOE,   :
                                     :
                Defendants.          :
----------------------------------X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 6/10/10

01 Civ. 3632 (LAP)

MEMORANDUM AND ORDER

LORETTA A. PRESKA, Chief United States District Judge:

Plaintiff pro se Echo Dixon ("Plaintiff"), an inmate,
brings this action pursuant to 42 U.S.C. § 1983 against
Defendants New York City Department of Correction Chief Leroy
Grant, Warden James Barry, Assistant Deputy Warden Passmore
Copeland, Correction Captain Felipe Laboriel, Correction Captain
Kushmir Salik, Correction Captain Johnson, Correction Officer
Martinez, and several unnamed or unidentified employees of the
Department of Correction (collectively, "Defendants").
Plaintiff alleges that Defendants' conduct constitutes cruel and
unusual punishment, deprivation of property, and deliberate
indifference to medical needs in violation of, inter alia, the
Fourth, Eighth, and Fourteenth Amendments.  Defendants move for

summary judgment.  For the reasons set forth below, Defendants'
motion [dkt. no. 66] is GRANTED.


I.   <u>BACKGROUND</u>

Plaintiff's claims arise out of incidents on February 20-
21, 2001 and May 17, 2001.  (Compl. ¶¶ 15-47.)[1]  On February 20,
2001, while he was an inmate in the Central Punitive Segregation
Unit of the Otis Bantum Correctional Center at Rikers Island
("Rikers"), Plaintiff was taken to Manhattan Supreme Court,
where, while being housed in a holding cell with other
prisoners, he was allegedly denied a hot meal.  (<u>Id.</u> ¶ 17; Defs'
56.1 Stmt. ¶ 2.)  While there, Plaintiff was sprayed with a
water-only fire extinguisher after one of the other prisoners
ignited a fire in the holding cell.  (Compl. ¶ 16.)  Thereafter,
Plaintiff and other prisoners were placed on a bus to take them
back to Rikers Island.  (<u>Id.</u> ¶ 20.)  Captain Johnson tailed the
bus with flashing lights and sirens on.  (<u>Id.</u>)  Captain Johnson
also allegedly told other officers to retaliate against
Plaintiff.  (<u>Id.</u> ¶ 21.)

Upon his return to Rikers, Plaintiff was transferred to a
new cell, but his property was not immediately transferred along
with him.  (<u>Id.</u> ¶¶ 23-24.)  Moreover, Plaintiff alleges that he

---

[1] "Compl." refers to Plaintiff's First Amended Complaint [dkt.
no. 5], filed on June 6, 2001.

was denied a blanket on what was a very cold night.  (Defs' 56.1 Stmt. ¶ 2.)  By the following evening, February 21, Plaintiff was in possession of both his property and a blanket.  (Id. ¶ 11.)

Plaintiff also alleges that Defendants caused him physical harm.  On February 21, Martinez allegedly used excessive force when he slammed Plaintiff's head to the floor.  (Compl. ¶ 31.) During the same incident, Laboriel allegedly assaulted Plaintiff when he sprayed Plaintiff's face with a chemical agent.[2]  (Id. ¶ 25.)  Defendants allegedly inflicted cruel and unusual punishment upon Plaintiff by forcing him to spend twelve hours in a decontamination cell incapable of decontaminating himself of the chemical agent.  (Id. ¶ 30.)  In addition, Dr. Bill Doe allegedly denied Plaintiff medical attention for his medical needs arising from this incident.  (Id. ¶ 27.)

On April 30, 2001, Plaintiff filed his original Complaint in this action.  [See dkt. no. 2.]  Thereafter, Defendants allegedly retaliated against Plaintiff in various ways. Initially, Defendants did not give Plaintiff the meals he was

---

[2] The term "assault" as used herein refers not to the common-law tort of assault but to an act akin to a common-law battery. This use is consistent with the Department's classification of "assault" as a non-grievable incident under the PLRA.  (See Cunha Decl. Ex. C at 2.)  To the extent Plaintiff intended this claim to be classified as something other than assault, it would be dismissed as a non-medical claim subject to the PLRA.  See infra at 4.

supposed to receive. (Compl. ¶ 45.) Next, on May 17, 2001, a
"Captain Garvey," not named as a defendant in this action,
picked up Plaintiff, threw him in the air, banged Plaintiff's
head on the floor, and repeatedly stuck his fingernails in
Plaintiff's ear. (Id. ¶¶ 46-47.) Sometime thereafter, Barry
allegedly threatened Plaintiff. (Id. ¶ 28.)

On June 6, 2001, Plaintiff filed his First Amended
Complaint [dkt. no. 5]. His claims therein can be classified
into three groups: (1) non-medical claims that are subject to
the PLRA, (2) the claim for denial of medical care that is also
subject to the PLRA, and (3) the assault claim against Laboriel
that is not subject to the PLRA. On October 18, 2002, after the
close of discovery, Defendants moved for summary judgment [dkt.
no. 66]. In a Memorandum and Order dated July 24, 2003 [dkt.
no. 81], the Court dismissed Plaintiff's Complaint without
prejudice for failure to exhaust his administrative remedies.
On August 13, 2003, Plaintiff filed a Notice of Appeal [dkt. no.
84]. On January 8, 2009, following a change in the applicable
law, the Court of Appeals vacated this Court's decision and
remanded for further proceedings. [Dkt. no. 98.] The parties
thereafter submitted additional arguments on this motion.

II.  DISCUSSION[3]

    A.  Legal Standard for Summary Judgment

As this is a motion for summary judgment, Defendants will prevail only "'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986) (quoting Fed. R. Civ. P. 56(c)). "An issue of fact is 'genuine' if 'the evidence is such that a reasonable jury could return a verdict for the non[-]moving party.' A fact is 'material' for these purposes if it 'might affect the outcome of the suit under the governing law.'" Overton v. New York State Div. of Military and Naval Affairs, 373 F.3d 83, 89 (2d Cir. 2004) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). In assessing whether a genuine issue of material fact exists, a court must examine the evidence in the light most favorable to the non-moving party. Lucente v. IBM Corp., 310 F.3d 243, 253 (2d Cir. 2002).

---

[3] Because Plaintiff is pro se, the Court construes his papers "to raise the strongest arguments that they suggest." Burgos v. Hopkins, 14 F.3d 787, 790 (2d Cir. 1994).

B.   Application to Defendants' Motion

1.   Failure to Exhaust Administrative Remedies

The Prisoner Litigation Reform Act (the "PLRA") provides, in pertinent part, that

> [n]o action shall be brought with respect to prison conditions under section 1983 . . . or any other Federal law, by a prisoner confined in any jail, prison or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a) (2006). "[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." Porter v. Nussle, 534 U.S. 516, 532 (2002). It "requires proper exhaustion," Woodford v. Ngo, 548 U.S. 81, 93 (2006), which means the prisoner must "compl[y] with the agency's deadlines and other critical procedural rules," id. at 90. Further, the exhaustion requirement applies even where a prisoner seeks relief "not available in grievance proceedings, notably money damages." Id. at 524.

Where a prisoner challenges defendants' assertion that the prisoner failed to exhaust his administrative remedies prior to filing suit, a court analyzes that assertion under the three-part framework articulated in Hemphill v. N.Y., 380 F.3d 680 (2d Cir. 2004). First, the court determines "whether administrative

remedies were in fact available to the prisoner." Id. at 686
(internal quotation marks omitted). Second,

> [t]he court should also inquire as to whether the
> defendants may have forfeited the affirmative defense
> of non-exhaustion by failing to raise or preserve it,
> or whether the defendants' own actions inhibiting the
> inmate's exhaustion of remedies may estop one or more
> of the defendants from raising the plaintiff's failure
> to exhaust as a defense.

Id. (citations omitted). Finally, if administrative remedies
were in fact available and defendants may properly assert non-
exhaustion, "but . . . the plaintiff nevertheless did not
exhaust available remedies, the court should consider whether
'special circumstances' have been plausibly alleged that justify
the prisoner's failure to comply with administrative procedural
requirements." Id. (internal quotation marks omitted).

In this case, the record establishes that, at least with
respect to the non-medical claims subject to the PLRA,[4]

---

[4] The Court notes that in 2002, defense counsel represented that
Plaintiff's claims based on the alleged denial of medical
treatment were subject to the Inmate Grievance Resolution
Program described herein. Now, however, defense counsel
represents that those claims were not subject to the IGRP but
were instead subject to a different administrative procedure.
Plaintiff testified that he initially grieved this claim through
the same process as his other claims—apparently the IGRP.
(Dixon Dep. 137:3-13.) Although this discrepancy is
significant, the Court need not resolve the issue. To the
extent Plaintiff followed the correct administrative channel, he
failed to pursue his grievance through the whole process, see
infra at 9-10; to the extent the correct process was
unavailable, Plaintiff failed to identify defendant "Dr. Bill
Doe" before the expiration of the applicable limitations period,
see infra at 14-15.

7

administrative remedies were available to Plaintiff at the time his alleged injuries occurred. The Department of Correction maintained an Inmate Grievance Resolution Program ("IGRP") to address inmates' grievances regarding certain conditions of their confinement. (See Cunha Decl. Ex. C; N.Y. Comp. Codes R. & Regs. tit. 7, § 701.7 (2001).) The IGRP was "designed to provide inmates with a formal process to redress their complaints, decrease litigation in the courts, ease facility tension, and improve conditions of confinement." (Id. at 1.) Grievances may be filed for any complaint pertaining to a written or unwritten policy of the Department, one of its service units, the execution of policies, the absence of policies, and certain conduct of prison staff toward inmates. (Id.)

The process by which an inmate addresses a concern begins with the filing of a grievance with the Inmate Grievance Review Committee ("IGRC"). (Id. at 6.) The IGRC and the grievant attempt to resolve the grievance informally within five business days. (Id.) If that attempt proves fruitless, the inmate may then request a formal hearing before the IGRC, at which witnesses may be called. (Id.) The IGRC renders a recommendation within three business days. (Id.) Inmates who are dissatisfied with the recommendation may appeal the IGRC's decision to the Warden, who must render a decision within five

8

business days.  (Id. at 7.)  Finally, the grievant may appeal
the Warden's decision to the Board of Corrections.  (Id.)  The
Board of Corrections issues an advisory recommendation to the
Commissioner, who must convey a final decision to the inmate
within twenty days.  (Id.)

     Plaintiff did not avail himself of these administrative
remedies.  Plaintiff's non-medical claims, which include the
claims for the deprivation of property, for any cruel and
unusual punishment alleged on the basis of Plaintiff's
confinement in the decontamination cell or Plaintiff's having
been sprayed with the fire extinguisher, for the cold
temperature in his cell, and for the denial of a hot meal, are
all subject to the IGRP because they pertain to a written or
unwritten policy of the Department, one of its service units,
the execution of policies, or the absence of policies.  See
supra at 7.  Plaintiff testified at his deposition that he
grieved the entire series of events that occurred on February
20-21, 2001 within one week of the occurrence.  (Dixon Dep.
139:3-13 ("Q: You told them about the entire incident?  A: Yes,
yeah.").)  Plaintiff also testified, however, that he did not
properly exhaust his administrative remedies but rather "pursued
[his concerns] by submitting a civil litigation."  (Id. at
141:13-142:7.)  The PLRA bars Plaintiff from choosing such a
course of action.  Woodford, 548 U.S. at 90.

With respect to the May 17, 2001 incident, Plaintiff
contends that Defendant Barry threatened him as a result of his
having filed this action on April 30.  (Compl. ¶ 34.)  Barry
allegedly said to Plaintiff, "You keep causing these problems,
this my building, and if I [sic] keep on going like that, you
going to be filing a lawsuit against me next."  (Dixon Dep.
143:18-21.)  Barry did not touch Plaintiff.  (Id. at 144:13-15.)
Even if this statement could somehow be interpreted as a threat,
Plaintiff similarly failed to exhaust his administrative
remedies as to this claim.  Plaintiff "does not contend that the
threat[] . . . prevented him from filing a grievance or
otherwise rendered DOCS grievance procedures unavailable."[5]
Ortiz v. McBride, 380 F.3d 649, 654 (2d Cir. 2004).  Therefore,
Plaintiff inexcusably failed to exhaust his available
administrative remedies with respect to all of his non-medical
claims.

To the extent Plaintiff contends that he did not pursue his
administrative grievance because of the purported futility of
such procedures (see, e.g., Dixon Dep. at 142:3-7 ("Q: After you

---

[5] Even if this claim were not barred by Plaintiff's failure to
exhaust, there is no legal basis for considering Barry's alleged
statement an independent violation of the Fourteenth Amendment.
See, e.g., Carrow v. City of N.Y., No. 06 Civ. 1436, 2010 WL
1009996, at *8 (S.D.N.Y. Mar. 17, 2010) ("It is well established
that verbal abuse and profanity is not actionable conduct under
42 U.S.C. § 1983, as it does not violate any protected federal
right.").

made the first [grievance], you believe that he passed the
information on to others, you decided to file this lawsuit and
not file grievance [sic]?  A: Yes.")), Plaintiff has no legal
basis for his position.  It is well established that "the
alleged ineffectiveness of the administrative remedies that are
available does not absolve a prisoner of his obligation to
exhaust such remedies."  Giano v. Goord, 250 F.3d 146, 150-51
(2d Cir. 2001).  Accordingly, Plaintiff's non-medical claims are
barred by the PLRA.

        The question remains whether these claims should be
dismissed with or without prejudice.  The statute of limitations
in New York for personal injury claims brought pursuant to
§ 1983 is three years.  Shomo v. City of N.Y., 579 F.3d 176, 181
(2d Cir. 2009).  "A Section 1983 claim ordinarily accrues when
the plaintiff knows or has reason to know of the harm."  Id.
(internal quotation marks omitted).

        Here, Plaintiff's claims accrued on February 20-21, 2001
and May 17, 2001, the dates when he was allegedly injured.  (See
Compl. ¶¶ 15-47.)  Plaintiff filed his original Complaint on
April 30, 2001 [dkt. no. 2]; the Court granted his in forma
pauperis request on May 4, 2001 [dkt. no. 1]; and he filed his
First Amended Complaint on June 6, 2001 [dkt. no. 5].  He filed
a Notice of Appeal on August 13, 2003, and the Court of Appeals
issued its mandate on January 8, 2009.  Assuming (without

11

deciding) that Plaintiff benefited from the tolling of his limitations period while the Court of Appeals had jurisdiction over this case, see Roldan v. Allstate Insurance Co., 544 N.Y.S.2d 359, 367-68 (2d Dep't 1989) (holding that the statute of limitations on the plaintiff's claims was tolled from the date the Supreme Court erroneously vacated a default judgment until the date the Appellate Division reversed and reinstated that judgment), almost four years have passed since Plaintiff's claims accrued. The three-year limitations period applicable to Plaintiff's claims has therefore expired, so Plaintiff would not be able to renew this action unless the Court equitably tolls the limitations period. For the following reasons, the Court concludes that equitable tolling is not warranted in this case.

"[E]quitable tolling is only appropriate in rare and exceptional circumstances, in which a party is prevented in some extraordinary way from exercising his rights." Zerilli-Edelglass v. N.Y. City Transit Auth., 333 F.3d 74, 80 (2d Cir. 2003) (internal alterations, quotation marks, and citations omitted). It

is generally considered appropriate where the plaintiff actively pursued judicial remedies but filed a defective pleading during the specified time period; where plaintiff was unaware of his or her cause of action due to misleading conduct of the defendant; or where a plaintiff's medical condition or mental impairment prevented her from proceeding in a timely fashion. When determining whether equitable tolling is applicable, a district court must consider whether

the person seeking application of the equitable
tolling doctrine (1) has acted with reasonable
diligence during the time period she seeks to have
tolled, and (2) has proved that the circumstances are
so extraordinary that the doctrine should apply.

Id. at 80-81.

No court in this circuit, however, has addressed the
circumstances under which the limitations period should be
equitably tolled during the pendency of a PLRA action that is
ultimately dismissed for failure to exhaust administrative
remedies.  Indeed, the Court of Appeals for the Fifth Circuit
appears to be the only court of appeals that has squarely
addressed equitable tolling in a similar context.  In Clifford
v. Gibbs, 298 F.3d 328 (5th Cir. 2002), the court permitted
equitable tolling of the statute of limitations on a § 1983
claim during the pendency of the prisoner's action in federal
court where the action was dismissed without prejudice for
failure to exhaust his administrative remedies.  Id. at 332-33.
The court reached this conclusion even though the presiding
magistrate had found that "any inequities caused by dismissal,
such as [plaintiff]'s inability to [exhaust his remedies] within
applicable limitations periods, were solely of [plaintiff's] own
making."  Id. at 330 (internal quotation marks omitted).

Although Clifford is instructive, application of that
court's analysis here would give Plaintiff the benefit of
equitable tolling without requiring him to carry the heavy

13

burden set forth in Zerilli-Edelglass. First, Plaintiff has not "acted with reasonable diligence during" the pendency of this action. Zerilli-Edelglass, 333 F.3d at 80. In its July 24, 2003 Memorandum and Order, the Court held that Plaintiff was required to exhaust his administrative remedies notwithstanding his belief that the grievance process was ineffective. [See dkt. no. 81 at 9.] The Court specifically advised Plaintiff of the limitations period applicable to his claims. [See id. at 10 n.1 ("Plaintiff should be aware that, in New York, claims under § 1983 are subject to a three-year statute of limitations.").] Plaintiff still did not exhaust his administrative remedies. Therefore, he did not "act[] with reasonable diligence" in pursuing his claims. Zerilli-Edelglass, 333 F.3d at 80.

Second, and more importantly, there are no extraordinary circumstances present here. Plaintiff testified at his deposition that he did not pursue his grievance because, he theorized, prison personnel were leaking his complaints to other officers and conspiring to thwart his grievance proceedings. (See Dixon Dep. 140:8-142:7.) Yet the believed ineffectiveness of the grievance procedure is not a valid basis for failing to exhaust administrative remedies, see Berry v. City of N.Y., No. 00 Civ. 2834, 2002 WL 31045943, at *7 (S.D.N.Y. Jun. 11, 2002) ("It is well established that the PLRA's exhaustion requirement cannot be waived based upon the plaintiff's belief that pursuing

14

administrative remedies would be ineffective or futile.")
(citing Giano, 250 F.3d at 150–51), so Plaintiff's circumstances
are not extraordinary.  Therefore, Plaintiff has not
demonstrated his entitlement to equitable tolling during the
period in which this action has been pending in federal court.
Accordingly, Plaintiff's non-medical claims subject to the PLRA
are dismissed with prejudice.


　　　　2.   Failure to Identify and Serve Certain Defendants

　　　　Even if Plaintiff had no available administrative remedies,
his claims against Defendants Correction Officer Martinez,
Captain Johnson, Dr. Bill Doe, Captain Steve Doe, Assistant
Deputy Warden John Doe, and Assistant Deputy Warden James Doe
must be dismissed with prejudice because Plaintiff has failed to
serve these defendants with process before the statute of
limitations had run.  These claims include certain non-medical
claims subject to the PLRA and Plaintiff's claim for denial of
medical care, which is also subject to the PLRA.

　　　　As discussed above, Plaintiff's statute of limitations has
long since expired, and the Court declines to equitably toll his
limitations period during the pendency of this action before
this Court.  Plaintiff still has not identified those defendants
and is now—more than nine years after his claims accrued—
barred from including them in this action.  Accordingly,

Plaintiff's claims against Martinez (Compl. ¶ 31), Johnson (id.
¶¶ 38-39), Dr. Bill Doe (id. ¶¶ 27, 36, 42-43), Captain Steve
Doe (id. ¶ 37), Assistant Deputy Warden John Doe (id. ¶ 39), and
Assistant Deputy Warden James Doe (id. ¶¶ 39-40) must be
dismissed, even if they were not subject to dismissal for
failure to exhaust administrative remedies.

### 3.   Laboriel is Entitled to Qualified Immunity

"The doctrine of qualified immunity protects government
officials 'from liability for civil damages insofar as their
conduct does not violate clearly established statutory or
constitutional rights of which a reasonable person would have
known.'"  Pearson v. Callahan, --- U.S. ----, 129 S.Ct. 808, 815
(2009) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)).

> This doctrine strikes a balance between the need, on
> one hand, to hold responsible public officials
> exercising their power in a wholly unjustified manner
> and, on the other hand, to shield officials
> responsibly attempting to perform their public duties
> in good faith from having to explain their actions to
> the satisfaction of a jury.

Duamutef v. Hollins, 297 F.3d 108, 111 (2d Cir. 2002) (internal
quotation marks omitted).  "A qualified immunity defense is
established if (a) the defendant's action did not violate
clearly established law, or (b) it was objectively reasonable
for the defendant to believe that his action did not violate
such law."  Tierney v. Davidson, 133 F.3d 189, 196 (2d Cir.

16

1998). "The objective reasonableness test is met if officers of
reasonable competence could disagree on the legality of the
defendant's actions." Id.

Here, Plaintiff does not dispute that Exhibit E to the
October 18, 2002 Declaration of Zachary A. Cunha is an accurate
video recording of the incident in which Laboriel sprayed
Plaintiff with a chemical agent.[6]  The video demonstrates that
Plaintiff repeatedly and violently resisted corrections
officers' attempts to transport him from his cell to another
part of the prison facility. For approximately eight minutes,
Plaintiff kicked at the officers, yelled at them, and struggled
to break free. Plaintiff also made repeated verbal threats
toward the officers. Because of Plaintiff's resistance, it took
approximately five officers—three of whom were wearing body
armor—almost ten minutes to transport Plaintiff on what would
otherwise have been a very short route.

After Plaintiff's first round of resistance, the officers
immobilized Plaintiff on a staircase. Laboriel warned Plaintiff

_____

[6] The Court is not required to, and does not, accept Plaintiff's
allegations regarding the incident because Plaintiff does not
dispute the video's accuracy. See Scott v. Harris, 550 U.S.
372, 380 (2007) ("When opposing parties tell two different
stories, one of which is blatantly contradicted by the record,
so that no reasonable jury could believe it, a court should not
adopt that version of the facts for purposes of ruling on a
motion for summary judgment."). The video reveals that
Plaintiff's allegations are so incomplete and self serving as to
paint an incorrect picture of the events that took place.

17

at least four times, all of which were loud and clear, that he would spray Plaintiff's face with a chemical agent if Plaintiff continued to resist.  Some minutes later, after Plaintiff had violently resisted the officers at least twice more, Laboriel sprayed Plaintiff's face with the chemical agent for less than one second.  Plaintiff thereafter walked to his destination without further resistance, saying, "That shit don't burn."

On these facts, Laboriel is entitled to qualified immunity because it was objectively reasonable for Laboriel to believe that his use of the chemical spray did not constitute excessive force.  Plaintiff attempted over and again to injure the officers and break free.  He indicated his intent to injure them through both his actions and his verbal threats.  Laboriel specifically explained to Plaintiff that he would be sprayed in the face with a chemical agent if he continued to act in the same violent manner.  When Plaintiff did continue to act that way, Laboriel administered the chemical agent consistent with his warnings.  Under these circumstances, there would be virtually no disagreement among reasonably competent officers that Laboriel used only what force was necessary to ensure the officers' safety in the volatile situation that Plaintiff himself created.  Accordingly, Plaintiff's assault claim against Laboriel is dismissed with prejudice.

18

III. CONCLUSION

For the foregoing reasons, Defendants' motion for summary judgment [dkt. no. 66] is GRANTED.  Plaintiff's claims are dismissed with prejudice.  The Clerk of the Court shall mark this case CLOSED and all pending motions DENIED as moot.

SO ORDERED:

DATED:     New York, New York
           June  _9_ , 2010

_Loretta A. Preska_
LORETTA A. PRESKA, Chief U.S.D.J.